UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § § § |
| V. | §   Crim. No. SA-06-CR-536 § § |
| SABIEN WHITE | § § |

ORDER

On this day came to be considered Defendant's Motion to Suppress (docket no. 16).

1. On September 16, 2006, law enforcement officers from the Bexar County Sheriff's Department were assigned to serve an arrest warrant (parole violation) for the Defendant. Defendant was then living at 251 Quinta, San Antonio, Texas. The officers were informed by agents from the Bureau of Alcohol, Tobacco and Firearms (ATF) that weapons may be possessed in the Quinta residence.

2. The officers were informed that the Defendant normally took his children to school in the mornings. Accordingly, the officers began surveillance of the Quinta home at 6:30 a.m. At about 7:40 a.m., Deputy Uresti saw Defendant coming out of the home with two nine-year old boys. Defendant and the two boys entered into a vehicle and drove to an elementary school located about three blocks from the Quinta home. Deputy Uresti informed Sergeant Rodriguez by radio of the Defendant's whereabouts and Sergeant Rodriguez initiated a traffic stop of the Defendant's vehicle at the school driveway/student drop off and pick-up lane.

3. At the school driveway Sergeant Rodriguez asked the Defendant to identify himself. The Defendant initially provided a false name. He subsequently provided his true identity and he was arrested. Sgt. Rodriguez informed the Defendant that law enforcement officers could take his children to a children's shelter or take them back home. The Defendant told Sgt. Rodriguez that he wanted the children to return to the Quinta home because their mother was at the home. Sergeant Rodriguez instructed Deputy Uresti to go back to the Quinta home and make sure that the mother (Pat Johnson) was at the home.

4. When Deputy Uresti and other uniformed law enforcement officers returned to the Quinta home they began knocking on the doors and windows, but no one answered. The home is small, approximately 800 square feet. The officers also called out Ms.

        Johnson's name (her name was provided by the Defendant). After five to eight minutes, Deputy Uresti radioed Sgt. Rodriguez and informed him that no one was answering.

5.     Approximately five minutes after Deputy Uresti arrived at the home, another deputy drove the Defendant's vehicle and escorted the children from the school back to the Quinta home.

6.     Shortly thereafter, Sgt. Rodriguez and the Defendant arrived at the home. At all times the Defendant was in handcuffs. The Defendant advised Sgt. Rodriguez that he could get Ms. Johnson to open the door and he was allowed to call out for Ms. Johnson. After no one answered, Sgt. Rodriguez asked the Defendant if he had a house key. The Defendant told Sgt. Rodriguez that the house key was located on the automobile key chain, that he knew Ms. Johnson was inside, and that Sgt. Rodriguez could open the front door, stating that he wanted his kids inside the home.

7.     Upon opening the door, at least six law enforcement officers entered the home. Immediately upon entering the home officers saw "little white baggies" of cocaine on top of a coffee table. Ms. Johnson and her brother were located inside the home. At that time, the Defendant, Ms. Johnson and her brother were read their *Miranda* rights. Shortly thereafter the Defendant informed Deputy Sanders that he wanted to cooperate and that the drugs belonged to him. The Defendant also informed Deputy Sanders where additional drugs could be found (under a couch inside a metal lock box). As a result of the Defendant's admission that he was the owner of the drugs, neither Ms. Johnson nor her brother were arrested. At some point in time, the children's grandmother was called to the home and she took custody of the twin boys.

8.     The Defendant's testimony that he did not consent to his children being driven back home, that he did not consent to any officer using the house key to open the front door, and that he would rather have his children taken to a shelter and have their mother eventually determine their whereabouts is not credible.

9.     Defendant argues that by arresting him on school property with his children still in the car the officers created a situation where the well-being of two nine-year olds was called into question. Accordingly, Defendant argues that if an exigent or emergency situation was created because of the two boys, the officers were responsible. Defendant argues that the boys could have easily been allowed to enter the school. Underlying this theory is an unstated proposition that the officers wanted to enter the Quinta home and merely found the boys as a convenient vehicle to allow for entry. There is, however, no evidence for this theory. To the contrary, the evidence was the officers wanted to avoid an arrest at the home for fear that the Defendant had weapons stored there. The Court does question the wisdom of arresting someone in the driveway of an elementary school at the school's busiest time. Especially when it is known that he has two small children in the car, violated his parole conditions

and is suspected of possessing weapons. The wisdom of the timing of the arrest, however, is not dispositive of the motion to suppress.

10. A warrantless entry into a dwelling is presumptively unreasonable unless consent is given or probable cause and exigent circumstances justify the encroachment. *U.S. v. Santiago*, 410 F.3d 193, 198 (5th Cir. 2005). In order to satisfy the consent exception, the government must prove, "by a preponderance of the evidence, that consent to the search was freely and voluntarily given. The voluntariness of consent is a question of fact to be determined from a totality of the circumstances. This court considers six factors in evaluating the voluntariness of consent to [enter or] search, all of which are relevant, but no one of which is dispositive or controlling. Those six factors are: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found." *Id.* at 198-99. The Court finds that the Defendant gave consent to return the children to the Quinta home and expressed an affirmative desire that the children be returned to their mother. The Court further finds that the Defendant consented to the officer's entry into the Quinta residence. Although the Defendant was under arrest, there was no evidence that coercive police procedures were used. There was no evidence presented that the police were interested in arresting the Defendant at home or making a search of the residence. Although no law enforcement officer specifically told the Defendant he had the right to refuse the officers entry into the home, the evidence clearly demonstrated that the Defendant wanted his children inside the home. Although no evidence was tendered as to the Defendant's educational background, during the hearing he appeared knowledgeable. As to the last factor, given that the Defendant admitted ownership of the drugs, the Defendant must have realized that incriminating evidence was left on the coffee table. The Defendant did not authorize a search of the premises and no search was conducted initially. The Defendant merely authorized entry into the home to locate the mother of the children. It is uncertain why the Defendant authorized entry given the presence of the drugs on the coffee table. Perhaps he forgot that they had not been secured. Perhaps during his short absence they were placed on the coffee table. Applying these six factors this Court determines that the Defendant's consent was made voluntarily.

11. The Court rejects the Government's alternative position that the "emergency doctrine" applies and the officers were justified in entering the home and attempting to return the children to their mother rather than sending them to a children's shelter. *U.S. v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001)("A warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the encroachment."). Defendant, relying upon *Jones*, argues that the "government's own action or inaction, however, cannot be the likely cause of an exigent circumstance." *Id.* at 720. *Jones* directs this Court that in "assessing whether the officers created the exigency, we focus on the

'reasonableness of the officers' investigative tactics leading up to the warrantless entry.'" *Id.*  In this case, the officers arrested the Defendant knowing he had two small children in the car and created the exigency.  The Court accepts the officers' testimony that they were acting out of compassion for the children in attempting to reunite them with their mother, rather than sending them to a shelter.  However, the officers' subjective motivation is not relevant.

Because the Court finds that the Defendant voluntarily consented to the officer's entry into the home, and the drugs were then in plain sight, the drugs need not be suppressed.  Defendant's motion to suppress is DENIED.

It is so ORDERED.

SIGNED this 8th day of January, 2007.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE